UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HERBERT L. BOGARDUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-660-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17].  Now before the Court

is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Doc. 18] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 19 & 20].

Herbert L. Bogardus ("Plaintiff") seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of

Social Security ("the Commissioner").  For the reasons that follow, the Court will **DENY**

Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On July 31, 2012, Plaintiff filed an application for disability insurance benefits pursuant to

Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., claiming a period of disability that

began on January 1, 2010.  [Tr. 66].  After his application was denied initially and upon

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner
Carolyn W. Colvin.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted as the Defendant in this case.

reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 110]. A hearing was held on July 11, 2014, and a second hearing on March 16, 2015. [Tr. 31-65]. On August 27, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 14-26]. The Appeals Council denied Plaintiff's request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on November 18, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2010 through his date last insured of December 31, 2013 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments:  osteoarthritis and allied disorders, obesity, organic mental disorders and affective disorders (20 CFR 404.1520(c).
>
> 4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except avoiding heights, hazards, exposure to weather, temperature extremes; avoiding climbing ladders, ropes, and scaffolds and crawling; occasionally climbing ramps and stairs,

balancing, stooping, kneeling, and crouching; frequently but not constantly reaching, handling, and fingering with the upper extremities; understanding, remembering, and carrying out simple, one to three step tasks; avoiding interaction with the general public; occasionally interacting with coworkers and supervisors; adapting to infrequent changes; and performing tasks in which reading and writing are not essential.

6. Through the date last insured, the claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on March 12, 1961 and was 52 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2010, the alleged onset date, through December 31, 2013, the date last insured. (20 CFR 404.1520(g)).

[Tr. 16-25].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her*

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff argues on appeal that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ did not properly weigh the medical opinions of record, including those from examining and non-examining state agency medical and psychological consultants. [Doc. 18-1 at 12-14]. Plaintiff also submits that the ALJ erred in assessing Plaintiff's credibility. [*Id.* at 15-20]. The Court will consider Plaintiff's specific assignments of error in turn.

### A.    Medical Opinions

Opinions from non-treating, examining and non-examining state agency medical and psychological consultants are evaluated using the balancing factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6). Specifically, "[t]he Commissioner [] weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheartv. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Although medical opinions must be considered and assessed by the ALJ, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a" claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)).

### 1.     Mental Limitations

Plaintiff submits that the ALJ erroneously assigned greater weight to the opinions of the non-examining state agency psychological consultants, Andrew Phay, Ph.D., and Robert Paul, Ph.D., over the opinion of consultative examiner William Kenney, Ph.D.

Dr. Kenney performed his consultative examination on October 4, 2012, and opined the following limitations:  Plaintiff had mild limitations understanding and remembering; he had moderate limitations concentrating and persisting; he had moderate-to-marked limitations in social interaction; and he had had moderate-to-marked limitations in adaption.  [Tr. 353-56].

On October 16, 2012, at the initial level of the administrative proceedings, Dr. Phay reviewed all available evidence, including Dr. Kenney's opinion, and opined the following moderate limitations:  Plaintiff could remember locations and work like procedures and understand and remember simple, one to three step tasks, as well as detailed tasks; he could maintain concentration, persistence, and pace to perform the foregoing tasks with appropriate breaks, sustain an ordinary work routine around others, and make acceptable simple and detailed work-related decisions; he could interact with the general public, supervisors, and peers in the workplace despite occasional disruption due to psychologically based symptoms, and he appeared able to maintain basic standards of neatness and cleanliness; and he could respond appropriately to changes and hazards in the workplace, travel to unfamiliar places, and set and pursue realistic work goals in a work setting.  [Tr. 76-77].  On February 11, 2013, at the reconsideration level, Dr. Paul concurred with Dr. Phay's findings.  [Tr. 95-96].

The ALJ assigned "some weight" to Dr. Kenney's opinion, finding the assessed moderate-to-marked limitations inconsistent with Plaintiff's activities of daily living.  [Tr. 23].  Specifically, Plaintiff reported performing household chores, such as washing dishes, taking out the trash,

mowing the lawn, driving long distances several times a year to out-of-state places including Chicago, Florida, South Carolina, and the mountains, and playing PlayStation and watching television. [Tr. 20, 23, 354]. The ALJ further observed that Plaintiff's six month stay in Florida in 2013 to care for his mother's house and petition the court for custody of his grandson showed greater ability to concentrate, persist, and adapt to change with social interaction. [Tr. 20]. In addition, the ALJ noted that Plaintiff worked after his alleged onset date, although the work did not qualify as substantial gainful activity. [*Id.*]. Moreover, the ALJ also discussed Plaintiff's performance on intelligence testing conducted by Dr. Kenney. [Tr. 23]. Dr. Kenney concluded that Plaintiff was strong in some of his nonverbal skills and arithmetic reasoning but slow in high graphomotor speed. [Tr. 355]. Plaintiff scored a 67 on word reading, and Dr. Kenney noted that Plaintiff reported never having learned to read or write well. [*Id.*].

The ALJ gave great weight to the non-examining state agency psychological consultants, Dr. Phay and Dr. Paul, finding their opinions "generally consistent with the weight of the evidence." [Tr. 22]. Prior to reaching this conclusion, the ALJ discussed Plaintiff's daily activities—noted above—as demonstrating that he is not as limited as he alleged, and that he had not received the medical treatment one would normally be expected to receive for allegations of disabling depression. [Tr. 20]. Specifically, Plaintiff did not seek any treatment for his depression until August 2013, three-and-a-half years after his alleged onset date and four months prior to his date last insured. [Tr. 20, 454-58]. Moreover, when psychotropic medications were recommended from Plaintiff's psychiatrist to help control depressive symptoms, Plaintiff declined to take any medications but occasionally self-medicated with marijuana. [Tr. 20, 62-63, 451-52]. Additionally, the ALJ cited to the arbitrariness of Plaintiff's alleged onset date, noting that the

alleged onset date did not correspond to any event or other circumstance that suggested Plaintiff's preexisting mental condition had worsened. [Tr. 20].

Plaintiff contends that it was inappropriate to give greater weight to Dr. Phay and Dr. Paul because they "did not have access to the full record over the opinion of" Dr. Kenney. [Doc 18-1 at 12]. Plaintiff's rationale, however, dissuades giving greater weight to Dr. Kenney because he was privy to the same, if not less, evidence as his opinion was rendered prior to both Dr. Phay's and Dr. Paul's opinions. "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). Here, it is evident that the ALJ considered later generated evidence as he discussed the treatment Plaintiff received toward the end of the relevant period under review. Plaintiff does not cite to any specific evidence that Dr. Phay or Dr. Paul did not consider but which undermines their opinions.

Furthermore, the fact that Dr. Kenney had the benefit of examining Plaintiff, by itself, is not grounds for assigning Dr. Kenney's opinion more weight. The ALJ must consider all of the regulatory balancing factors when assessing a medical opinion. *See* 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ's consideration of Plaintiff's daily living activities, sparse medical treatment, and arbitrary alleged onset date go to the consistency, supportability, and "other" regulatory balancing factors the ALJ is charged with considering and provide substantial evidence for the weight assigned to the opinions of Drs. Phay, Paul, and Kenney.

Plaintiff asserts that his daily living activities, however, are not inconsistent with the moderate-to-marked limitations assessed by Dr. Kenney, because none of his admitted activities

demonstrate that he can concentrate and persist, interact socially, and adapt to change in a work setting on a regular and continued basis. [*Id.*]. But the ALJ did rely on Plaintiff's daily living activities alone to demonstrate that Plaintiff maintained the RFC to perform substantial gainful activity. [*See* Tr. 19-24]. Rather, Plaintiff's daily living activities simply demonstrated that he was not as limited as he alleged, thereby undermining the more restrictive limitations assessed by Dr. Kenney. Accordingly, the Court finds that substantial evidence supports the ALJ's consideration of the medical opinions of record regarding Plaintiff's mental limitations. *See Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 212 (6th Cir. 2015) (upholding the ALJ's decision where "[t]he evidence demonstrates Morr reported good activities of daily living and had very little medical treatment between her alleged onset date and her date last insured.").

### 2. Physical Limitations

Plaintiff likewise contends that the ALJ erred in assessing the medical opinions of record regarding his physical limitations, and that the ALJ should have given greater weight to the opinion of consultative examiner Robert Blaine, M.D., over the opinion of a second consultative examiner, Jeffrey Uzzle, M.D.

Dr. Blaine conducted his examination of Plaintiff on September 18, 2012. [Tr. 350-52]. He assessed Plaintiff with posttraumatic back, hip, and ankle pain, carpal tunnel syndrome, and bursitis of the right shoulder. [Tr. 352]. As to Plaintiff's functional limitations, Dr. Blaine opined that Plaintiff could stand or walk for three hours in an eight-hour workday, lift and carry up to five pounds frequently and up to 25 to 40 pounds infrequently, and sit for eight hours with reasonable rest breaks. [*Id.*].

During the first administrative hearing conducted in July 2014, the ALJ determined that a second consultative examination was necessary since Dr. Blaine's opinion was two-years-old and

the functional abilities of Plaintiff's hands needed to be particularly assessed. [Tr. 63-64]. Dr. Uzzle thereafter conducted an orthopedic exam on August 25, 2014. [Tr. 481-93]. He concluded there were "no major objective findings" on examinations and that Plaintiff's subjective complaints were disproportionate to examination findings which included full range of motion in both ankles with good ankle stability, no joint deformities from osteoarthritis, and no objective basis to conclude that Plaintiff had significant limitations with his hands. [Tr. 483]. The following functional limitations were assessed: Plaintiff could lift and carry up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally; he could sit for two hours and stand and walk for one hour at one time and could sit for six hours and stand and walk for four hours each in an eight-hour workday; he could frequently use his hands for reaching, handling, fingering, feeling, pushing, or pulling; he could frequently use his feet to operate foot controls; he could frequently perform all postural activities; and he could continuously be exposed to humidity and wetness, pulmonary irritants, and extreme cold, and he could frequently be exposed to unprotected heights, moving mechanical parts, vibrations, and operation of a motor vehicle. [Tr. 486-90].

The ALJ assigned "little weight" to Dr. Blaine's opinion that Plaintiff "was limited to lifting and carrying only five pounds on a frequent basis because it is inconsistent with the record and the benign examination findings." [Tr. 22]. Instead, the ALJ assigned "great weight" to Dr. Uzzle's opinion that Plaintiff could perform light exertional work because his findings were more consistent with the record and examination findings. [Tr. 23].

Plaintiff argues that Dr. Blaine's opinion was entitled to more weight because it was supported by his own examination findings while Dr. Uzzle's opinion was internally inconsistent, generally limited to plaintiff's hands, and actually offered more support for Dr. Blaine's findings. [Doc. 18-1 at 13-14].

As an initial matter, the Court notes that the purpose of Dr. Uzzle's examination was to conduct a general orthopedic exam but with a particular focus on Plaintiff's hands. [*See* Tr. 64-65, 481]. While Plaintiff argues that the ALJ should have deferred to Dr. Blaine's opinion, the only part of his opinion that appears to have received "little weight" from the ALJ was Dr. Blaine's conclusion that Plaintiff could carry five pounds frequently and between 25 and 30 pounds infrequently. Indeed, the ALJ only referenced Dr. Blaine's lifting and carrying restriction in concluding that the record and examination findings did not support his opinion. Moreover, the remaining limitations assessed by Dr. Blaine—that Plaintiff could stand or walk for three hours and sit for eight hours in a workday—are consistent with Plaintiff's RFC for light work.[2] Accordingly, the Court's inquiry is whether substantial evidence supports a finding that Plaintiff can perform the weight requirements of light work which require an individual to lift and carry up to 20 pounds frequently and 10 pounds occasionally. 20 C.F.R. § 404.1567(b).

The Court finds substantial evidence supports the ALJ's decision to give greater weight to Dr. Uzzle. Dr. Uzzle observed that Plaintiff produced nonanatomic responses on Phalen's and Tinel's testing bilaterally, he had inconsistent results in sitting versus supine straight leg raise testing, and other than some reduced range of motion in the dorsolumbar spine, Plaintiff had normal range of motion of the cervical spine, shoulders, elbows, and wrists. [Tr. 482, 484]. Moreover, as to Plaintiff's upper extremities, reflexes were normal and symmetrical, sensation to sharp and dull touch was normal, strength testing was 4+/5, and grip strength was 2 PSI symmetrically. [Tr. 483]. Dr. Uzzle also noted positive Waddell signs.[3] [*Id.*]. Furthermore,

---

[2] A job is considered to fall in the light work category "when it requires a good deal of walking or standing, or when it involves sitting most of the time . . . ." 20 C.F.R. § 404.1567(b).

[3] "'Waddell's signs' are the most well-known of several tests developed to detect non-

12

Plaintiff received only minimal treatment for his physical ailments during the relevant period under review. And in fact, while Plaintiff established care with his primary care provider in August 2013, Plaintiff did not complain about problems with his wrists or hands until May 2014, five months after Plaintiff's insured status expired.[4] [Tr. 421]. Although Plaintiff may disagree with the ALJ's decision to defer to Dr. Uzzle's opinion, the Court finds that giving greater weight to Dr. Uzzle's opinion was within her "zone of choices." *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that [claimant] now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence.").

Plaintiff maintains, however, that the ALJ's decision is flawed because while Dr. Uzzle's opinion received great weight, his lifting and carrying restrictions are more consistent with medium work[5] than an RFC for light work. But "the fact that [the ALJ] gave 'great weight' to Dr. [Uzzle's] opinion does not mean that [s]he was required to adopt it wholesale." *Newsome v.*

_____

organic causes of low back pain." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 422 n.15 (6th Cir. 2013) (citation omitted).

[4] Although Dr. Uzzle's examination was conducted more than two years after Plaintiff's insured status expired, the Court observes that Plaintiff's impairments and complaints have generally remained the same both during the relevant period under review and thereafter. Thus, the Court finds that Dr. Uzzle's opinion could properly be relied upon by the ALJ as the opinion relates back to the relevant period under review. *See Smith v. Astrue*, No. CIV.A. 08-180-DLB, 2009 WL 4930893, at *3 (E.D. Ky. Dec. 15, 2009) ("[A]n ALJ has a duty to consider subsequent medical evidence of a plaintiff's condition after his date last insured to the extent the evidence is relevant to the plaintiff's condition preceding the date last insured.") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Furthermore, the Court notes that Plaintiff has not argued otherwise and also relies on medical evidence that post-dates Plaintiff's date last insured to assert his claim of disability.

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c)

*Astrue*, No. CIV. 11-1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (rejecting the plaintiff's argument that by giving great weight to a consultative examiner's opinion, the RFC assessment should have perfectly tracked the source's opinion); *see Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013) (when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence."). To Plaintiff's benefit, the ALJ concluded that the evidence overall supported a lifting and carrying restriction of light work.

The Court is equally unpersuaded by Plaintiff's contention that Dr. Uzzle's opinion is "internally inconsistent" because he assessed functional limitations despite concluding that Plaintiff's subjective complaints were disproportionate to objective findings. Dr. Uzzle specifically noted, "no *major* objective findings on orthopedic exam," [Tr. 483] (emphasis added), which is not the same as if he had made no abnormal findings at all. Dr. Uzzle observed moderate pain behavior on examination [Tr. 482] but reasonably concluded that examination findings as a whole failed to substantiate Plaintiff's subjective allegations.

Therefore, the Court likewise finds that substantial evidence supports the ALJ's assessment of the medical opinions regarding Plaintiff's physical limitations.

### B.     Credibility

Plaintiff additionally contends that the ALJ's credibility assessment is unsupported by substantial evidence.

As discussed above, the ALJ's decision addressed several factors that undermined the severity of Plaintiff's symptoms. Discounting credibility is appropriate when the "ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters*, 127

F.3d at 531. "[A]n administrative law judge's credibility findings are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010)). For the reasons that follow, the Court finds that Plaintiff has not set forth compelling reason to depart from the ALJ's credibility finding.

First, the ALJ noted the arbitrariness of Plaintiff's alleged onset date of January 1, 2010, which was not related to a period of time in which Plaintiff's impairments worsened or any other traumatic event that would explained why Plaintiff became "disabled." [Tr. 20]. As evidence supporting his alleged onset date, Plaintiff cites to his testimony that he tried to go back to work in 2009 but his back and leg pain had worsened, and that he was hospitalized in October 2009 for chest pain and shortness of breath. [Doc. 16 at 15-16]. The Court finds that neither of these instances explains his onset date. Plaintiff continued to work despite long-standing allegations of leg pain that began with an ankle injury sustained in 2007. [*See* Tr. 51, 178, 312-49]. In fact, Plaintiff reached "maximum medical improvement" in February 2009, but continued to work. [Tr. 189, 313]. Plaintiff also testified that he started having back pain 20 years ago after sustaining a work injury, but the first record of treatment is from April 2013 when Plaintiff presented to the emergency room with back pain that began only several days prior. [Tr. 362-63]. And while he presented to the emergency room in October 2009 for chest pain and shortness of breath [Tr. 266], as cited by Plaintiff, these stypoms resolved and the record does not suggest that they have reoccurred.

Furthermore, Plaintiff did not receive any routine medical treatment between March 2009, 10 months prior to the alleged onset date, and August 2013, three-and-a-half years after his alleged onset date. Thus, the ALJ reasonably concluded that Plaintiff's "allegedly disabling impairments

were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." [Tr. 23]; *see Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (considering the fact that the plaintiff continued to work for two years after his accident and that the objective medical evidence did not support the plaintiff's allegations that his condition worsened during that two-year period).

Second, the ALJ discounted Plaintiff's credibility due to admitted daily living activities which have fully been set forth above. Plaintiff cites to his testimony and a single medical record to argue that the ALJ failed to appreciate that Plaintiff's wife assisted him in the activities recounted by the ALJ. [Doc. 18-1 at 16] (citing Tr. 59-60, 440). To the contrary, Plaintiff merely testified that his wife, who also has health issues, accompanied him to Florida and they took turns driving on the way there. [Tr. 59-60]. The cited medical record by Plaintiff is of even less probative value as it merely recounts that Plaintiff lived in Florida for six months and was under increased stress due to familial issues. [Tr. 440]. Neither piece of evidence contradicts Plaintiff's ability to perform the daily living activities discussed by the ALJ.

In addition, the ALJ discounted Plaintiff's credibility because he was not compliant in taking prescribed medications or following medical advice. [Tr. 20]. In this regard, Plaintiff smoked marijuana occasionally to self-medicate, he refused psychotropic medications in 2013 to treat his depression, and he continued to smoke cigarettes. [*Id.*]. Plaintiff argues that "[t]he ALJ's analysis is a mischaracterization of purported noncompliance," and explains that he did not take his medication Pravastatin for hyperlipidemia while he was in Florida because he forgot his medication at home, and he often fell asleep before remembering to take Gabapentin. [Doc. 18-1 at 16] (citing Tr. 61-62, 448). The ALJ, however, did not rely on either of these instances in

discounting Plaintiff's credibility. Even so, the basis for which Plaintiff did not take his Pravastatin and Gabapentin does not change the fact that he remained noncompliant. More importantly, Plaintiff's explanation says nothing about his choice to continue smoking cigarettes or marijuana, or his refusal to take psychotropic medications to treat an alleged disabling impairment.

Finally, the ALJ concluded that the type and frequency of treatment Plaintiff received was inconsistent with the treatment normally received for a totally disabled individual. Specifically, the ALJ noted that the lack of medical treatment for Plaintiff's depression until August 2013 and his refusal to take psychotropic medication "suggest that his depressive symptoms were not as serious as he alleged in connection with his application." [Tr. 20]. Additionally, the ALJ pointed to the minimal medical treatment of Plaintiff's physical impairments which consisted of two medical appointments in 2013 and taking over the counter medication until January 2014 when Plaintiff was prescribed Gabapentin. [Tr. 21]. "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. Feb. 3, 2004); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996) (stating that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure").

Plaintiff submits that because he did not have health insurance, the ALJ erroneously used the lack of treatment to discount Plaintiff's credibility. [Doc. 18-1 at 17]. Although Social Security Ruling 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996), cautions adjudicators against drawing adverse inferences from a claimant's lack of consistent or frequent medical treatment

where the claimant is unable to afford treatment or does not have access to free or low-cost medical services, that is not the case here. Plaintiff testified that he received treatment from his primary care provider, Cherokee Health Systems, without insurance and that "it doesn't cost me really any money . . . ." [Tr. 54]. By Plaintiff's own admission, he had access to free and/or low cost healthcare but for reasons unknown to the Court, Plaintiff did not utilize this resource until shortly before his insured status expired. Furthermore, despite Plaintiff's testimony that he has suffered from back and leg pain for 20 years [Tr. 51-56], he provides no explanation for not receiving treatment while he was working, a time in which Plaintiff was "presumably able to afford some if not all of the medical care he needed" [Doc. 18-1 at 18].

In sum, the Court finds that Plaintiff's alleged onset date, daily living activities, noncompliance with medical recommendations, and the lack of treatment were appropriate factors considered by the ALJ and provided substantial evidence in which the ALJ could properly discount Plaintiff's credibility.

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 18**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge